IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CASEY and STEPHANIE OTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-441-WHA |
| | ) | |
| QUICKEN LOANS, INC., | ) | (WO) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. # 24) and accompanying Memorandum (Doc. # 25) filed by Defendant Quicken Loans, Inc. on November 21, 2014. Also before the court are Plaintiffs Casey and Stephanie Ott's Response in Opposition (Doc. # 33) and Defendant's Reply thereto (Doc. # 34).

The Plaintiffs' original Complaint was filed in the Circuit Court of Autauga County, Alabama in September of 2012. The Complaint alleges state law claims for breach of contract; fraudulent misrepresentation; promissory fraud; fraudulent suppression, negligent and wanton conduct; negligent and wanton hiring, supervision, and training; intentional infliction of emotional distress; and slander of credit. All of the claims stem from Plaintiffs' dealings with Defendant after they applied for a loan to refinance their home mortgage and began the process of closing on the loan.

The Defendant removed the case to this court based on diversity jurisdiction in June of 2013, and the Plaintiffs did not file a motion to remand. The court finds that diversity jurisdiction exists in this case.

1

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A)–(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be

believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiffs first contacted the Defendant to inquire about refinancing the mortgage on their home in Prattville, Alabama in April of 2012. Stephanie Ott went online to apply for a refinancing loan under the government Home Affordable Refinance Program ("HARP"). If approved, the Plaintiffs would have entered into an adjustable rate mortgage (ARM) loan for seven years with a locked rate of 2.99%, which could then increase to a rate no higher than 7.99%. The Plaintiffs were interested in lowering both their interest rate and their monthly payments.

Stephanie Ott filled out Defendant's "Uniform Residential Loan Application" on April 18, 2012. On the same date she and Casey Ott filled out a Certification and Authorization to Release Information, Plaintiffs received an "Interest Rate Disclosure" form from Defendant through its employee Sean Barry ("Barry"), and they also received a Truth-in-Lending Disclosure Statement, pursuant to the requirements of the Truth in Lending Act (TILA). On April 23, 2012, Barry sent the Plaintiffs a letter stating they were "conditionally approved for a 7/1 Arm Conforming loan in the amount of $283,925.00." (Doc. # 26-2 at 120.) As part of the initial application process, Plaintiffs submitted a $500 good faith deposit to be applied to the cost

of appraisal and credit report at closing, along with any other closing costs.  The fee was to be refunded, except for the cost of the appraisal and credit report, in the event the loan did not ultimately close.

In the period that followed, two factors became problematic in the loan approval process. First, copies of Plaintiffs' most recent tax returns showed a Schedule E loss of $20,522.00. Second, upon receipt of an employment verification letter from Stephanie Ott's employer, Defendant learned that she was on short term disability and was receiving paychecks amounting to a reduced portion of her full-time salary.  The full-time salary was listed on the original loan application.  Although employees of Defendant tried to work with the Plaintiffs to get the loan approved in the following weeks, the loan was denied on June 15, 2012 because of problems with the Plaintiffs' debt-to-income ratio.  Representatives of Defendant informed the Plaintiffs that $200 more in monthly income was required to bring the ratio within the necessary range to get the loan approved.  Defendant refunded the good faith deposit less the cost of credit inquiries.

In the initial exchange of paperwork, the Plaintiffs received a document called "Things We Need from You," detailing further information and documents Defendant would need as part of the application process. This document instructed the Plaintiffs to continue paying their existing mortgage payments until Defendant was "completely finished with [the] new loan." (Doc. # 26-2 at 118.)  In contrast with this written instruction, Barry told the Plaintiffs sometime around May 10 that they should not pay their monthly mortgage payment for May because the loan would be closing soon.  As the month went by and the loan did not close, the Plaintiffs became concerned about their mortgage payment because they knew it would be overdue if it was not paid by the end of May.  They did ultimately make the payment in early June, but before they did their mortgage account went into collections.

4

After the failed loan approval process concluded, both Plaintiffs had lower credit scores than they had before the process began. The Plaintiffs believed that this was due in substantial part to excessive credit inquiries performed by Defendant.

## IV. DISCUSSION

### A.   Breach of Contract

Under the Alabama Statute of Frauds, contracts falling under the statute are "void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing." § 8-9-2 Ala. Code 1975. The statute covers "every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provision of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000." *Id.* at (7). The loan at issue here qualifies under this provision, as it would have been a loan for $283,295.00, according to Barry's conditional approval letter. Any commitment by Defendant to enter into the loan would therefore need to satisfy the Statute of Frauds to be enforceable.

Defendant contends, and Plaintiffs nowhere argue otherwise, that there was never a signed written loan commitment agreement between the parties sufficient to satisfy the Statute of Frauds. Plaintiffs do not argue that the alleged agreements and oral representations by Defendant fall outside the statutory language, but rather appear to argue that their claims can get around the bar of the Statute of Frauds if they satisfy the elements of promissory estoppel due to "detrimental reliance." (Doc. # 33 at 3–4.) Plaintiffs further argue that Alabama "appears to have completed the transition from using promissory estoppel as a substitute for consideration in a contract action to treating promissory estoppel as a claim independent of contract." (*Id.* at 4.)

First, the Plaintiffs' argument that promissory estoppel is a "claim independent of contract," leads the court to conclude that Plaintiffs no longer assert an independent breach of contract claim. Their promissory estoppel arguments are their only response to Defendant's reliance on the Statute of Frauds. To the extent Plaintiffs alleged a breach of contract claim independent of their promissory estoppel and other fraud-based claims, the court deems that claim abandoned as the theory seems to have shifted entirely to promissory estoppel.

Second, to the extent the Plaintiffs have argued that promissory estoppel is an exception to the Statute of Frauds, the court finds they are mistaken. As the Alabama Supreme Court has reasoned:

> [T]he Statute of Frauds identifies defined categories of oral promises that are especially subject to fabrication and *especially unworthy of reliance or enforcement*. Therefore, for the courts, on a theory of promissory fraud, to countenance a plaintiff's claim that he has relied on such a promise and to redress that plaintiff's claim that he has suffered from the breach of such a promise, defies the policy and frustrates the efficacy of the Statute of Frauds.

*Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003) (emphasis added); *see also DeFriece v. McCorquodale*, 998 So. 2d 465, 470 (Ala. 2008) (rejecting promissory fraud claim based on alleged statements covered by the Statute of Frauds, relying on *Bruce*). In this case, without denying that the representations at issue fall within the Statute of Frauds, Plaintiffs ask the court to enforce an oral promise of the type discussed in *Bruce*. In light of the Alabama Supreme Court's pronouncement that the enforcement of such promises "defies the policy and frustrates the efficacy of the Statute of Frauds," the court will decline to let this claim proceed. The court will further discuss Plaintiffs' fraud-based claims in the next section, but for multiple reasons it finds that summary judgment is due to be GRANTED on Plaintiffs' breach of contract claim.

### B. Fraud-Based Claims and Reasonable Reliance

Under Alabama law, legal fraud is defined as "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party." Plaintiffs' claims falling into this category, based upon the Complaint, include promissory fraud, fraudulent misrepresentation, and fraudulent suppression. Plaintiffs allege that "Defendant made representations to the Plaintiffs that their re-fi was approved and the closing would be happening." (Doc. # 33 at 8.)

#### 1. Misrepresentation and Promissory Fraud

Under Alabama law, a fraud claim consists of the following elements: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008) (internal quotations and citations omitted). Additionally, to prevail on a promissory fraud claim, a plaintiff must establish two other elements: "(5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive." *Id.* (internal citations and quotations omitted).

The Defendant is entitled to summary judgment on these claims because the record shows that any reliance by the Plaintiffs on oral promises made by representatives of the Defendant[1] was not reasonable as a matter of law. In Alabama, a plaintiff claiming fraud is

---

[1] The Defendant does not unconditionally concede that such oral promises were made, but assumes they were made for the purposes of its Motion for Summary Judgment. (Doc. # 34 at 2 n.1). The court does the same, as it must construe the record in the light most favorable to the Plaintiffs.

7

required to establish "reasonable reliance."[2]  *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 2003).  Under this standard, the factfinder considers "all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties."  *Id.*  Furthermore, the reasonable reliance standard allows a court to "enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."  *Id.*  Thus, where written information or disclosures, capable of comprehension by the Plaintiffs, are supplied, reliance on contrary oral assurances is unreasonable as a matter of law.  *See, e.g.*, *AmerUs Life Ins. Co. v. Smith,* 5 So.3d 1200, 1208 (Ala. 2008) ("[A] plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents."); *Wright Therapy v. Blue Cross*, 991 So.2d 701, 706 (Ala. 2008) ("Under the ['reasonable-reliance'] standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract.") (*quoting Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So.2d 777, 783–84 (Ala. 2000)).

      The court finds that this case fits squarely into the category of cases in which there is no reasonable reliance as a matter of law.  Although the written documents in Plaintiffs' possession expressly stated that there was no guarantee of approval and they should keep paying their mortgage until the loan was finalized, Plaintiffs maintain they reasonably relied upon oral assurances made by representatives of the Defendant.  Specifically they argue that they "may be

---

[2] The *Foremost* decision overruled past case law in which the relevant standard was "justifiable reliance," which "eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction." *Foremost*, 693 So. 2d at 421.

able to prove that it was both reasonable and foreseeable they would rely on the Defendant's assurances the re-fi would occur." (*Id.* at 5.)  The court disagrees with this assessment, as the written documents Plaintiffs received from Defendant contained multiple disclaimers and disclosures contrary to the oral representations.  The "Interest Rate Disclosure" form dated April 18, 2012 and signed by Stephanie Ott stated in bold: "Neither this agreement nor the locking of an interest rate is a commitment to lend by lender or an underwriting approval of your loan." (Doc. # 26-2 at 109.)  The Truth-in-Lending Disclosure Statement from the same date stated: "There is no guarantee that you will be able to refinance to lower your rate and payments." (*Id.* at 111.)  Finally, Item 13 of the "Things We Need from You" document instructed the Plaintiffs to continue to make their mortgage payments until Defendant was "completely finished with [the] new loan." (*Id.* at 115.)  There is no dispute that the Plaintiffs received and read these documents.  (Doc. # 33-3 at 185:5–186:23 (Plaintiffs received and read "Things We Need from You"); Doc. # 26-2 at 63:4–9 (Mr. Ott understood from the written documents that there was no guarantee the loan would be approved)).

There is no genuine issue of material fact as to whether the Plaintiffs reasonably relied on representations by Defendant that they should not pay their existing mortgage payment and that the refinancing loan would close.  Because the Plaintiffs received and read written documents with explicit disclosures to the contrary, they could not have reasonably relied on the oral representations as a matter of law.  Therefore, summary judgment is due to be GRANTED on Plaintiffs' claims of fraudulent misrepresentation and promissory fraud.

   2.  **Fraudulent Suppression**

The Plaintiffs' Response to the Motion for Summary Judgment does not discuss their fraudulent suppression claim in any detail.  It does not list the elements of fraudulent suppression or discuss how they have been satisfied in this case.  Therefore, the court deems the fraudulent

9

suppression claim abandoned[3] and finds summary judgment is due to be GRANTED on the claim.

    C.    **Negligent and Wanton Conduct**

In support of their claims of negligent and/or wanton conduct, Plaintiffs argue that "the Defendant owed Plaintiffs a duty—formed and created by their own actions. The Defendant created this duty by representing to the Plaintiffs that not only was their loan approved, but that it would be closing in a matter of days."  (Doc. # 33 at 9.)  Alabama law recognizes no such form of action in this context.  Specifically, there is an "emerging consensus that 'Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.'"  *Deutsche Bank Trust Co. Americans v. Garst*, 989 F. Supp. 2d 1194, 1205 (N.D. Ala. 2013) (quoting *Prickett v. BAC Home Loans*, 2:12–CV–0826–LSC, 2013 WL 2248135, at *5 (N.D. Ala. May 21, 2013)).  As a recent Northern District of Alabama decision explained:

> Courts have found two justifications for this conclusion. First, "a negligent failure to perform a contract . . . is but a breach of the contract." [Citing *Prickett,* 2013 WL 2248135, at *5.] Accordingly, claims related to performance under a mortgage agreement must be brought under contract law.  Second, damages for mortgage servicing are typically economic, while tort liability more appropriately seeks compensation for personal injury and property damage.  Both justifications are strengthened by the plethora of alternative avenues for relief in "negligent mortgage servicing" cases, including the FDCPA.

*Garst*, 989 F. Supp. 2d at 1205.  For these reasons, any separate claims of negligence against Defendant stemming from the alleged misrepresentations and breaches of contract in this case are not cognizable.  There is nothing about this case to distinguish it from the typical mortgage servicing case in which damages are usually economic, unlike cases in which plaintiffs seek to recover "compensation for personal injury and property damage"

---

[3] *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding a non-movant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim).

by bringing tort claims. *See id.* Summary judgment is due to be GRANTED on Plaintiffs' negligence and/or wantonness claims.

### D. Negligent Hiring, Training, and Supervision

Plaintiffs' Complaint alleges a claim for negligent hiring, training, and supervision of Defendant's employees. The Response in Opposition to the Motion for Summary Judgment makes no attempt to rebut Defendant's contention that Plaintiff has not presented any evidence relevant to establishing such a claim under Alabama law. The court deems this claim abandoned, and summary judgment is due to be GRANTED as to this claim.

### E. Intentional Infliction of Emotional Distress

Under Alabama law, in order to sustain a claim for intentional infliction of emotional distress (IIED) a plaintiff must present "substantial evidence indicating" that the conduct complained of "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 630 (Ala. 2010) (internal quotations and citations omitted). The Alabama Supreme Court has further clarified that: "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).

The Defendant has argued that successful claims for IIED in Alabama are generally restricted to three particular categories: 1) cases involving wrongful conduct in the context of family burials; 2) a case in which insurance agents used heavy handed strategies to induce settlement of a claim; and 3) a case involving egregious sexual harassment. (Doc. # 25 at 33.) In response, the Plaintiffs supply case law showing successful claims outside these narrow categories, all of which are related to the employment law context. (Doc. # 33 at 10–11.)

11

However, Plaintiffs fail to discuss or argue the ways in which their own case meets the high standard for IIED.  They only state that "there are many interpretations of outrage claims under Alabama law," and that "[t]he conduct of Defendant in the present matter also rises to the level of outrageous conduct toward the Plaintiffs."  (*Id.* at 11.)  Such a conclusory assertion, with no supporting evidence, argument, or discussion, is insufficient to create a genuine issue of material fact.  The court finds that the submitted evidence and briefing fail to even suggest that Defendant's conduct may have risen to the high threshold of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Horne*, 56 So. 3d at 630.  Summary judgment is due to be GRANTED on this claim.

    **F.**    **Slander of Credit**

Plaintiffs' Response in Opposition fails to respond to Defendant's arguments supporting the Motion for Summary Judgment as to the claim that Defendant damaged Plaintiffs' credit.  The court deems this claim abandoned, and summary judgment will be GRANTED on the claim.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Motion for Summary Judgment (Doc. # 24) is GRANTED.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 20th day of January, 2015.

    /s/ W. Harold Albritton
    W. HAROLD ALBRITTON
    SENIOR UNITED STATES DISTRICT JUDGE